**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DANIELLE RAE PRUSSAK, | No. 57233-8-II |
| Respondent, | |
| v. | ORDER GRANTING MOTION TO PUBLISH |
| ROBERT ALLAN PRUSSAK, | |
| Appellant. | |

Non-party applicants Family Violence Appellate Project, Clark County Volunteer Lawyers Program, King County Sexual Assault Resource Center, The Northwest Justice Project, and Tacomaprobono Community Lawyers filed a motion for publication in this court's opinion filed on July 18, 2023. After consideration, the court grants the motion. It is now

**ORDERED** that the opinion will be published.

**PANEL:** Jj. Cruser, Veljacic, Che

**FOR THE COURT:**

CRUSER, A.C.J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| DANIELLE RAE PRUSSAK, | No. 57233-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ROBERT ALLAN PRUSSAK, | |
| Appellant. | |

CRUSER, A.C.J. — Danielle and Robert Prussak[1] were married for 27 years and have two minor children together. Robert and Danielle separated in August 2020. After the separation, Danielle moved to Washington with the children and Robert stayed in California where they previously lived together.

On July 7, 2021, a superior court commissioner found that Robert committed acts of domestic violence against Danielle and issued a one-year domestic violence protection order (DVPO) that restricted him from coming within 1000 feet of Danielle and directed that he correspond with her only regarding the children. The court found that during their marriage, Robert was violent towards Danielle on three occasions, including one sexual assault.

On June 14, 2022, Danielle petitioned to renew the DVPO for one year. A court commissioner heard arguments from the parties, who both appeared pro se. Robert testified to the efforts he made at rehabilitation, including attending alcoholics anonymous (AA), a batterers'

---

[1] For clarity, we refer to the parties by their first names.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57233-8-II

course, and individual therapy. Danielle testified that Robert was monitoring her activities and investigating individuals he believed she was romantically involved with. She also alleged Robert violated the DVPO and that Robert was late and short in making his court-ordered support payments. She said that Robert directed her to file taxes jointly with him instead of separately, and Robert did not deny contacting her about taxes, though he took issue with Danielle's characterization of his tone. The parties both discussed conflicts that existed between them at the time of the hearing, including conflicts about custody, finances, and logistics.

The court renewed the DVPO for one year, finding that Robert failed to prove that he would not resume domestic violence and failed to prove that there was a substantial change in circumstances. Robert appeals that decision, arguing that the court abused its discretion because it said Robert's monitoring was "potentially stalking behavior" and Robert contends his behavior did not meet the statutory definition of stalking. Rep. of Proc. (RP) at 25. He further argues that the court improperly allowed Danielle to testify on Robert's failure to make timely and complete support payments, and on Robert's desire to file taxes jointly, without including such allegations in her petition.

We affirm the superior court's ruling because it was reasonable for the court to find that Robert failed to meet his statutory burden to show that there had been a substantial change in circumstances and that acts of domestic violence would not resume.

FACTS

Danielle and Robert Prussak were married for 27 years and have two minor children together. They separated in August 2020, and Danielle filed for divorce in San Diego where the

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57233-8-II

family lived. Danielle and the children then moved to Washington, and the couple was in the midst of a contested divorce proceeding in California at the time of the Washington DVPO proceedings.

On June 4, 2021, Danielle petitioned Thurston County for a domestic violence protection order protecting her from Robert. She alleged that physical abuse began in 1992, when Robert grabbed and shoved her in the shower causing a large bruise, and on another occasion grabbed her by the shirt collar. She also alleged that Robert physically forced her into unprepared and nonconsensual anal sex in 2007. She alleged that Robert continuously "intimidated, threw or slammed objects, swung a baseball bat, [and] blocked exits, during arguments" throughout their relationship. Clerk's Papers (CP) at 6. She described the argument leading up to their separation, when Robert allegedly grabbed her leg after pushing his way into a bedroom where Danielle had barricaded herself with the children, fearing for her safety. She also alleged that Robert installed a nanny cam app on her phone to monitor her calls and texts.

At the DVPO hearing on July 7, 2021, Danielle testified that Robert continually contacted her friends and their spouses "asking about [her] mental state" and telling them that she is "mentally unstable because of entering perimenopause." CP at 99. Danielle also testified that Robert began monitoring her electronic devices in 2018 and continued up until the time of the hearing. She explained that her phone's manufacturer found a nanny cam app on the phone when she called customer support, and that she believed Robert installed the nanny cam app to monitor her.

The court commissioner made an oral ruling granting Danielle's petition. It found Danielle's testimony "very credible." CP at 127. The court found that Robert assaulted Danielle on two instances in 1992. The court also found that Robert sexually assaulted Danielle in 2007.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57233-8-II

The court did not find that Robert assaulted Danielle in August 2020 or that Robert stalked Danielle at any time, but in doing so the court stressed that it "d[id]n't have to" make such findings. CP at 130. It reasoned that "[e]ven if there hasn't been any [violence] for a long time, that's one of the riskiest times in a relationship is when it splits up." CP at 132. It then concluded that "given the history of physical violence and sexual assault, and given the very concerning pattern of not exactly stalking but things that are pushing boundaries, not listening to you, trying to set [his] own agenda about the custody, and all of these other things . . . a domestic violence protection order should issue." CP at 138.

The DVPO issued on July 7, 2021, restricted Robert from knowingly coming within 1,000 feet of Danielle's home, workplace, and the martial arts studio she and the children attended. The DVPO also restrained Robert from keeping Danielle "under physical or electronic surveillance." CP at 60. It also required that "[d]irect communication by [Robert] to [Danielle] is allowed . . . to discuss only visitation and the welfare of the minor children." CP at 61. Robert moved for revision of the commissioner's order, arguing that Danielle's subjective fear of bodily harm was not reasonable and that his alleged behavior did not meet the definition of stalking in RCW 9A.46.110, and his motion was denied.

On June 14, 2022, Danielle petitioned for a renewal of the DVPO. She alleged that Robert monitored her activities and conducted background checks on people he thought Danielle was associating with. She also alleged that on one instance Robert violated the terms of the DVPO by getting closer than 1000 feet during a custody exchange at the airport.

The court heard arguments on the DVPO renewal on July 19, 2022. Both parties appeared pro se. The court explained that it would renew the DVPO unless Robert proved by a

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57233-8-II

preponderance of the evidence that there had been a substantial change in circumstances and that he would not resume acts of domestic violence against Danielle.

Robert testified that he had complied with the DVPO for the past year, participated in AA, took a batterer's course, and received individual counseling. He also disputed Danielle's claim that he was within 1000 feet of her at the airport and that he monitored her activities. He admitted to searching the internet to obtain information about an individual that he believed Danielle was "associated with" and that he contacted Danielle about this individual through his attorney to ask that the children not ride in the car with him. RP at 14.

Danielle testified that Robert "directed" her to file her taxes jointly with him and offered her money to do so. RP at 17. She explained that Robert made light (incomplete) support payments, as well as making late payments in six of the 15 months he was required to make them. She went on to testify that she was concerned that domestic violence would continue if the DVPO were allowed to terminate. She was most alarmed by Robert's monitoring behaviors, including researching individuals he thought Danielle was involved with, and asking their child to identify a photo of someone he thought Danielle was dating. Danielle also shared that Robert had recently requested primary custody of the children in the California divorce case. Robert made no objections during Danielle's testimony.

Robert disputed Danielle's testimony about late support payments, saying that he paid late only once, but he did not respond to Danielle's assertion that his payments were light. He also disputed Danielle's characterization of the tax conversation, saying he never "ordered" her to file jointly but that doing so would have benefitted both of them and their children. RP at 24. He did not deny that he contacted her about taxes.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57233-8-II

The court found that Robert failed to meet his burden of proving a substantial change in circumstances and proving that violence would not resume, and it granted Danielle's petition to renew the DVPO. It expressed concern that violence could resume given the ongoing conflict between Robert and Danielle, including their custody battle, financial disputes, and disagreements about custody exchanges. It was also concerned about Robert's monitoring behavior. It explained that researching individuals who might be seeing Danielle was "potentially stalking behavior, harassing behavior. And that is not okay." RP at 25. Robert now appeals.

ANALYSIS

Whether to issue a DVPO is reviewed for abuse of discretion. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002). "A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons." *State v. Taylor*, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019). "To conclude the trial court abused its discretion, the reviewing court must find no reasonable person would agree with the trial court's decision." *Wood v. Milionis Constr., Inc.*, 198 Wn.2d 105, 128, 492 P.3d 813 (2021).

When petitioning for renewal of a previously issued DVPO, "[t]he petitioner bears no burden of proving that he or she has a current reasonable fear of harm by the respondent." RCW 7.105.405(3). Rather, the respondent must prove by a preponderance of the evidence that there has been a substantial change in circumstances and that they will not resume acts of domestic violence when the order expires. RCW 7.105.405(4)-(4)(a).

The court is allowed but not required to consider certain statutory factors, including "[w]hether the respondent has committed or threatened sexual assault; domestic violence; stalking; . . . or other harmful acts against the petitioner" and "[w]hether the respondent has violated the

7

No. 57233-8-II

terms of the protection order" since the DVPO's entry. RCW 7.105.405(5)(a), (b). The statute also provides that "[o]ther factors relating to a substantial change in circumstances" may be considered. RCW 7.105.405(5)(g).

Here, both parties' testimony focused on events after the issuance of the DVPO. Robert testified that he had complied with the DVPO, participated in AA, took a batterer's course, and received individual counseling. He also disputed Danielle's complaints that he monitored her activities and that he violated the DVPO by coming too near to her during an exchange of the children. Danielle emphasized Robert's monitoring behavior and attempts to influence her financial situation by making late and incomplete support payments and directing her to file taxes jointly instead of individually. Both of the parties testified about unresolved conflict regarding custody arrangements, and they disagreed as to how frequently Robert was late or short on his court-ordered support payments to Danielle. They agreed that Robert contacted Danielle about taxes but disagreed over whether Robert "directed" or "ordered" Danielle to do anything, or whether he merely tried to persuade her to file jointly. RP at 17, 24.

The court did not abuse its discretion when it found that Robert failed to meet his burden to show a substantial change in circumstances and that acts of domestic violence would not resume. For one thing, it is undisputed[2] that Robert contacted Danielle about taxes, which is a violation of the DVPO. In considering whether there has been a substantial change in circumstances, a trial court may consider whether the restrained party has violated the DVPO. *See* RCW

---

[2] Although Robert complains that he did not receive adequate notice of Danielle's testimony on this matter, he failed to make any objection before the commissioner. *See* RP at 16-21; RAP 2.5(a). He also chose to discuss the issue in his rebuttal. Robert fails to persuade us that this is a manifest error affecting a constitutional right, and we decline to consider this issue for the first time on appeal. *See* RAP 2.5(a).

8

No. 57233-8-II

7.105.405(5)(b). Additionally, it was reasonable for the court to consider the parties' ongoing custody battle, financial disputes, and disagreements about exchanging the children. Where a history of violence exists, such stressors could reasonably be expected to trigger a return to violent behavior. Moreover, these areas of conflict are properly considered as "[o]ther factors" within the meaning of RCW 7.105.405(5)(g).

Furthermore, it was reasonable for the court to consider Robert's monitoring behavior and explained that it was "not okay" for Robert to research individuals he thought Danielle could be involved with. RP at 25. Robert's argument that his behavior did not meet the statutory definition of stalking is misguided. The court did not make a finding that Robert stalked Danielle, but merely stated that the behavior was "potentially stalking behavior, harassing behavior." RP at 25. Although it might not rise to the level of stalking, it was reasonable for the court to treat such behavior as "other harmful acts" against Danielle within the meaning of RCW 7.105.405(5)(a). It is within the court's discretion to find that such behavior indicates there has not been a substantial change in circumstances, especially where the initial DVPO was based, at least in part, on "not exactly stalking" behavior. CP at 132. It shows continuity of conduct and is thus highly relevant to whether there has been a change in circumstances.

Finally, Robert misunderstands his burden in this matter and contends that the burden of proof lies with Danielle, not him. As such, his arguments center entirely on his assertion that Danielle did not meet her burden. Robert is incorrect, as we explain above. This burden is his. We affirm.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 57233-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Cruser, A.C.J.

We concur:

Veljacic, J.

Che, J.

10